TATE, Judge
(dissenting).
By the trial court decree, a iom-week old baby girl was taken from its mother. There is absolutely no evidence that the wife had misbehaved since she left her husband nine months before, with the intention of marrying another man. Her husband himself frankly admitted that he knew of no misconduct on his wife’s part since she left home some nine months before. Tr. 109.
The trial court did not find that the mother was an unfit parent at the time of the hearing below. On the contrary, the trial court, according to its specific reasons for *75 judgment, felt obliged to take away the child from its mother by the decision in Gary v. Gary, La.App. 3 Cir., 143 So.2d 411, because the divorce judgment some six months earlier had awarded the father custody of the eight older children, and because there was no showing that the father was no longer a fit parent.
As the majority notes, however, Gary v. Gary applies only when a change is requested in a previous custody order. Then, the party seeking the change has the burden of showing that, because of material changes since the earlier decree, the child’s best interest is no longer served by its remaining in the custody of the parent to whom originally awarded.
Such a rule, of course, has no application to the present situation, where the custody of this just-born baby was not determined by the earlier divorce decree. The present is an original custody hearing, since the custody of this newly-born baby had never been at issue before in any court proceedings.
Under these circumstances, the well recognized rule is that the best interests of small children, and particularly of infants, are regarded as best served by awarding their custody to their mother, unless she is morally unfit. In this regard, the issue is the mother’s present moral fitness; it is an error of law to deprive the mother of custody because in the past she has committed adultery or been guilty of other indiscretions, although at the present time she is morally fit and is able to afford the child a good home. See McCaa v. McCaa, La.App. 2 Cir., 163 So.2d 434, citing several Supreme Court and other decisions to this effect.
In the present case, the evidence shows that the plaintiff wife had been a good mother and a good wife for over ten years of marriage. Immediately before she left her husband in September of 1962, after twelve years of marriage, she fell in love with another man, which led to her leaving her husband and to her divorce from him.
I certainly do not think that she is a fit candidate for the Congressional Medal of Honor because she fell in love with another man and left her husband, nor do I think her conduct in this regard should be condoned. However, I think it is also fair to add that her husband, who was a prominent doctor some thirty years older than she when he married her as a teenager, and to whom she bore ten children, is not shown by the record to have been a kind and considerate husband, but instead a man who demanded submissiveness and attempted to enforce it by physical beating and whipping with a belt. The record also shows that it was only in the unhappy later stages of this marriage, and particularly within a very few months prior to the time the plaintiff wife left her husband, that she stayed out at night and was a non-exemplary wife.
After she left her husband, the record shows without contradiction that she lived in Lake Charles and Jennings, while the man she intended to marry lived in Port Arthur. There is absolutely no evidence of any misconduct by the wife with this other man after she left her husband. I think it extremely unlikely that, if she had misbehaved, proof of same would not have been produced, what with the bitterness between the spouses and the husband’s financial means to secure investigative aid to discover same, such as private detectives.
Unless the law of Louisiana is that a mother, once an adulteress, may never, never thereafter obtain custody of her children, no matter how blameless thereafter her life may be, the action of the majority herein in taking the custody of this four-week old child from its mother is plainly erroneous as a matter of law. Under the jurisprudence of this state, the plaintiff mother is entitled to the custody of her just-born infant, since the record does not show she is now morally unfit to have its custody.
In passing, I should mention that the record shows that the divorce on the ground of adultery was not in truth a contested matter. The answer was prepared by the *76 husband’s counsel and. was signed by the wife in propria persona. The evidence of the so-called “adultery” was arranged between the parties to facilitate a prompt divorce. The plaintiff wife had intended to go to another state and secure a divorce in three months in order to marry the younger man with whom she was in love; but, without contradiction in the record, the evidence shows that she was instead persuaded by the husband and his attorney, and against the advice of a lawyer whom she had consulted but not hired, to agree to the divorce on the grounds of adultery as being much quicker and less expensive than an out-of-state divorce, and to the best interests of all, since the wife could not afford to keep the eight older children after the separation, and since supposedly she would have the right to see them and be with them as often as she wished after the divorce.
Before concluding, I think I should also refer to the attitude of the defendant father. The father frankly admitted that he had not sought custody of the newly-born baby, had refused to support it, and that he had told or sent word to his wife both before and after the present custody proceedings, that he would not pay for support of the child, but that he would not disturb her custody providing she did not try to make him support it. By his own admission, the husband offered to drop his reconventional demand herein for custody of the child if she would drop these proceedings seeking his support of the child. Tr. 188-192.
The father had evidenced no interest whatsoever in the infant’s welfare and had contributed nothing to pay for its birth (the wife had had to pawn her jewelry to pay for this) or other needs. He had not even tried to see the baby until it was ten days old, when he happened to make a house call on the infant’s grandmother (the plaintiff wife’s mother) and was brought in to see the baby at that time. By his own admission, the father had not contributed a •dime to the support of the baby and did not intend to do so unless forced by the court. The action of the father in seeking custody of the child, according to the record, seems to be motivated not from love of the child, but simply from a desire to spite his wife or to avoid paying her alimony for its support.
Under these circumstances, is not the custody of a loving mother, who can afford the child a good home and who, although penniless, has fought to be afforded that right, to be regarded as more advantageous and more to the child’s welfare, than to award the child’s custody to an unloving father, who, although wealthy, has refused to pay for the child’s food and medicines and who has only begrudgingly sought to obtain the child’s custody, simply for the purpose of avoiding having to make alimony payments to support this baby?
The effect of the majority opinion is to rubber-stamp the trial court’s award of custody, even though, according to the reasons for it actually given by the trial court, the award of custody to the father was erroneous as a matter of law. We do not know if, applying the proper legal principles, the trial court would have torn this infant from its mother’s arms: We only know from the written reasons that the trial court felt obliged to do so by the decision in Gary v. Gary, which the majority of this court finds inapplicable as a matter of law. We also know that the trial court did not in fact find that the mother was not presently fit to have the custody of her baby.
I can find no legal authority to indicate that under these circumstances an appellate court must not disturb the trial court’s custody disposition based upon reasons admittedly erroneous as a matter of law.
I think the majority is in error in depriving this presently fit mother of the custody of her newly-born baby. I therefore respectfully dissent from the opinion of my conscientious brethren of the majority.